UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORMAN STROZIER,<br><br>        Plaintiff,<br><br>v.<br><br>HERC RENTALS, INC. and JLG INDUSTRIES, INC.,<br><br>        Defendants. | CIVIL ACTION NO.<br>1:19-CV-01083-JPB |

## **ORDER**

This matter is before the Court on Herc Rentals, Inc.'s ("Defendant") Motion to Exclude Opinions of Russ Rasnic and Anthony Lusi [Doc. 156] and Motion to Exclude the Testimony of Rob Bullen [Doc. 157]. This Court finds as follows:

### **RELEVANT PROCEDURAL HISTORY**

This case arises from a workplace accident in which Norman Strozier and Derrick Douglas fell from a boom lift while in the course and scope of their employment for Daystar, a construction company. Defendant rented the boom lift to Daystar. The only remaining claim before the Court is for negligent bailment.

In that claim, Plaintiffs[1] contend that Defendant breached its duty as a bailor because it delivered the boom lift to the construction site with a defective or non-working tilt alarm.

Trial is scheduled for September 11, 2023.  Defendant seeks to exclude the testimony of three of Plaintiffs' expert witnesses:  (1) Russ Rasnic;[2] (2) Anthony Lusi; and (3) Rob Bullen.  In the analysis that follows, the Court will analyze whether these experts will be permitted to testify.

## LEGAL STANDARD

When assessing the admissibility of expert evidence, the Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993), and that a testifying expert is qualified "by knowledge, skill, experience, training, or education," Fed. R. Evid. 702.  To that end, the Court fulfills a gatekeeping role "to ensure that speculative, unreliable expert testimony does not reach the jury under

---

[1] Plaintiffs are Strozier and Brandy Douglas, in her individual capacity as Douglas's wife and as the executor of his estate.

[2] In its motion, Defendant asked this Court to exclude the entirety of Rasnic's numbered opinions.  While Defendant asked that these particular opinions be excluded, Defendant clarified that it would seek to introduce one of the unnumbered opinions.  Plaintiffs responded by purporting to withdraw Rasnic as a witness.  Consequently, the issue before the Court as to Rasnic's testimony is whether Plaintiffs may withdraw him as a witness.

the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The Court assesses the admissibility of expert evidence under a three-prong test:

> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted); see also United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (summarizing these three "basic requirements" as "qualification, reliability, and helpfulness"). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Rink, 400 F.3d at 1292.

## ANALYSIS

1. **Russ Rasnic**

The parties dispute whether Defendant can call Rasnic as a witness in this case. Plaintiffs retained Rasnic, a mechanical engineer with lift design and operation experience, as an expert witness. Rasnic rendered his expert report on

October 29, 2020, and was deposed by the parties on February 12, 2021. In the Consolidated Pretrial Order, both parties identified Rasnic as a potential testifying expert witness.

Plaintiffs, however, have now withdrawn Rasnic as an expert witness. Indeed, Plaintiffs make clear that they do not intend to call Rasnic as a witness in any capacity. As a result, Plaintiffs ask this Court to enter an order that prevents Defendant from calling Rasnic as a witness. See supra note 2.

As a general rule, "[o]nce a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party." Peterson v. Willie, 81 F.3d 1033, 1037-38 (11th Cir. 1996). In determining whether the witness should be permitted to testify, "a balancing standard is used to weigh the interests of the party [seeking to call the witness] . . . against the interests of the opposing party who originally employed the expert." Russ v. Berchtold Corp., No. 12-24482, 2013 WL 12092523, at *2 (S.D. Fla. Nov. 5, 2013). Notably, if an expert is allowed to testify, "a party should not generally be permitted to establish that the witness had been previously retained by the opposing party." Peterson, 81 F.3d at 1038.

The Court has considered the interests of both Defendant and Plaintiffs in evaluating whether Rasnic can testify. Here, Defendant has stated that it would

like to call Rasnic to testify about whether the tilt alarm was functioning at the time of the accident. This testimony is certainly relevant to the remaining claim before the Court, and thus Defendant has demonstrated a compelling reason to call the witness. As to Plaintiffs' interests, Plaintiffs have not shown that they will be unfairly prejudiced by Rasnic's testimony or that some other reason warrants excluding the testimony.[3] In sum, after balancing the interests at hand, the Court concludes that Defendant may call Rasnic at trial. Defendant is cautioned that it should not elicit testimony that Rasnic had been retained by Plaintiffs as an expert witness.

   2. **Anthony Lusi**

Plaintiffs also retained Lusi as an expert witness in this matter. In the instant motion, Defendant seeks to exclude two of Lusi's opinions: (1) that the pre-delivery inspection of the boom lift was inadequate and (2) that the post-accident inspection of the boom lift was not a complete inspection because it was performed

---

[3] Plaintiffs seem to argue that Rasnic's testimony should be excluded simply because he was withdrawn as a witness and was originally retained by them. The Court finds this argument to be unavailing. "A witness identified as a testimonial expert is available to either side; such a person can't be transformed after the report has been disclosed, and a deposition conducted, to the status of a trial-preparation expert whose identity and views may be concealed." SEC v. Koenig, 557 F.3d 736, 744 (7th Cir. 2009).

in a small area where the boom lift could not be driven around.[4]  As to both of these opinions, Defendant asserts that they are unreliable because Lusi ignored material evidence.  As to the pre-delivery inspection, Defendant contends that Lusi failed to review key documents, including the pre-delivery checklist itself.  As to the post-accident inspection, Defendant contends that Lusi ignored evidence that the tilt-alarm was tested on a slope.

In this case, Defendant challenges only the reliability of Lusi's opinions. Defendant specifically contends that Lusi's opinions are not based on sufficient facts or data because Lusi failed to review a key document pertaining to the pre-delivery inspection and a video of the post-accident testing.  The Court does not agree that Lusi's opinions should be excluded on this basis.  Here, Lusi arrived at his conclusion after reviewing multiple depositions, accident photos, the JLG operation and safety manual, the OSHA file, discovery responses and the incident and investigation report.  [Doc. 156-6, pp. 1-2].  The Court finds that these sources are sufficient to support Lusi's opinion that the pre-delivery and post-delivery inspections were inadequate.  Moreover, Defendant's concerns may be addressed

---

[4] Defendant also moved to exclude the other opinions made by Lusi because they were only relevant to claims no longer before the Court.  Plaintiffs agreed that it would not seek to introduce those opinions.  To the extent that Defendant's motion pertains to those opinions, the motion is **GRANTED**.

on cross-examination; if Lusi failed to review a particular test that Defendant believes renders his opinions erroneous, Defendant can cross-examine Lusi as to this issue to test whether his ultimate conclusions are proper. See United States v. Ala. Power Co., 730 F.3d 1278, 1282 (11th Cir. 2013) (noting that "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'" (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311-12 (11th Cir. 1999))). As such, the Court will not exclude Lusi's opinions for lack of reliability. Hardman v. Se. Permanente Med. Grp., Inc., No. 1:18-CV-1281-LMM, 2020 WL 6135655, at *5 (N.D. Ga. June 15, 2020) (determining that the expert reviewed sufficient evidence before rendering an opinion). To the extent that Defendant argues that Lusi's opinions as to the pre-delivery and post-delivery inspections should be excluded, the motion is **DENIED**.

### 3. Rob Bullen

Plaintiffs retained Bullen, a physical and biomedical engineer, to provide his expert opinion regarding the failure to use fall protection.[5] In his October 29, 2020 expert report, Bullen opined that even if Strozier and Douglas were wearing fall

---

[5] It is undisputed that when the boom lift tipped over, neither Strozier nor Douglas were wearing fall protection.

protection, they would have nevertheless sustained severe injury or death because (1) the rapid deceleration force was equivalent to approximately 20 Gs[6] and (2) Strozier and Douglas would have hit the work platform due to the elastic rebound of the fall protection lanyard.

In his March 15, 2021 deposition, Bullen admitted that he did not rely on any testing to form his opinions. [Doc. 157-4, pp. 18-19]. In other words, he did not perform any tests or simulations that would show what type of injuries a person would sustain if subjected to 20 Gs or if a person's body would rebound and hit the work platform if the boom lift tipped over. Bullen did, however, state that he relied on "multiple professional articles" and on his experience in reaching his conclusions. Id. at 61. When asked the names of the articles upon which he relied, Bullen explained that he could get the articles but that he did not have the names of them readily available. Id. at 61-62. Significantly, Bullen admitted in his deposition that this was the first case in which he has attempted to correlate force input through a fall arrest system and actual injury. Id. at 67. Bullen also admitted that he did not perform calculations, including the collision velocity, pertaining to the injuries sustained as a result of the rebounding lanyard because he had already

---

[6] A G or G-force is the force of gravity or acceleration on a body.

determined that severe trauma would result due to the rapid deceleration.  Id. at 92-93.

Defendant moved to exclude Bullen's testimony as unreliable on September 30, 2022, and in response, Plaintiffs submitted a new affidavit from Bullen.  In the affidavit, Bullen details his qualifications, explains what biomechanical engineering is and sets forth in slightly more detail the methodology for his opinions.  As to the methodology, Bullen first explains how he determined that Strozier and Douglas would have experienced deceleration forces up to 20 Gs.[7]  Second, Bullen explains that to reach his conclusion that the deceleration force would have resulted in severe injuries, even death, he relied on (1) historical data regarding military ejection seats; (2) OSHA regulations, which provide that the maximum arresting force on a person is 1,800 pounds; and (3) a "number of sources and studies" that evaluate the maximum directional forces that a human spine can endure without injury.  [Doc. 168-5, pp. 4-5].  Third, as to Bullen's opinion that Strozier and Douglas would have hit the work platform when the

---

[7] The Court notes that Defendant does not dispute the amount of deceleration forces.  Instead, Defendant argues that Bullen fails to link the amount of deceleration forces with the injury.  In other words, Defendant challenges the basis on which Bullen concludes that 20 Gs would cause severe injury or death.

lanyard rebounded, Bullen provided some calculations that he had not provided previously.

As stated above, Defendant moved to exclude Bullen's testimony. Before turning to whether Bullen's testimony should be excluded, the Court must first determine whether the new affidavit can be considered.

### a. Consideration of the New Affidavit

Federal Rule of Civil Procedure 26 requires that "[a] party must make [expert witness] disclosures at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D). In order to make a proper disclosure, a party must disclose the identity of the expert and the expert's written report. That report must "contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). An expert witness has a duty to supplement his report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Importantly, "[a]ny additions or changes" to the expert report "must be disclosed

by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

As a general rule, "[c]ourts have broad discretion to exclude untimely expert testimony." Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 718 (11th Cir. 2019). Indeed, when a party fails to comply with Rule 26(a) or (e), Federal Rule of Civil Procedure 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Mitchell v. Ford Motor Co., 318 F. App'x 821, 825 (11th Cir. 2009).

In this case, Plaintiffs failed to timely file Bullen's second affidavit. Plaintiffs filed their expert disclosures in this case on October 29, 2020, and Bullen was deposed on March 15, 2021. Discovery closed on April 26, 2021. Significantly, the parties' deadline to supplement expert reports was September 30, 2022, when the Consolidated Pretrial Order was due. Instead of supplementing the expert report by the deadline, Plaintiffs submitted Bullen's new expert affidavit on November 18, 2022.

As stated previously, Rule 37 provides that untimely evidence must be excluded unless the nondisclosing party (here, Plaintiffs) can show that the failure to disclose was substantially justified or harmless.  Plaintiffs have shown neither.  First, Plaintiffs cannot show that they were substantially justified in filing an untimely affidavit because their only purpose for filing it was to bolster a defective or problematic expert witness report that was filed more than two years earlier.  See Guevara, 920 F.3d at 719 ("[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report.").  Rule 26(e)

> does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies, and there is no reason why the new assumptions and methodologies used in the second report could not have been adopted and disclosed in the first during the discovery period.

Jones Creek Invs., LLC v. Columbia County, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015).  Ultimately, because Plaintiffs only seek to supplement Bullen's report to remedy a deficient expert report, Plaintiffs failed to show that they were substantially justified in filing the untimely affidavit.

The Court must next consider whether Plaintiffs' failure to timely disclose the affidavit was harmless.  Discovery in this case has been closed since April 26, 2021, and trial is currently scheduled for September 11, 2023.  Moreover, the additional expert affidavit was filed after Defendant filed its Daubert motion.

Allowing Bullen to rely on his new affidavit at this stage in the litigation would likely require the Court to reopen discovery.  Reopening discovery would result in additional expense to Defendant and risks delaying trial in this matter.[8]  Accordingly, Plaintiffs have not shown that their failure to timely disclose the affidavit was harmless.  See Kawas v. Spies, No. 2:20-cv-138, 2023 WL 2403779, at *4 (S.D. Ga. Mar. 8, 2023) (finding that the delay was not harmless where the new expert report was filed after the close of discovery).

To conclude, Bullen's additional affidavit was not timely.  Moreover, Plaintiffs failed to show that the failure to timely disclose the affidavit was substantially justified or harmless.  As a result, the additional affidavit is **STRICKEN** and will not be considered in deciding whether Bullen's testimony should be excluded under Daubert.[9]

---

[8] Delaying trial in this matter would be a significant burden, given the difficulty of finding a trial date that accommodated all of the parties.  Trial in this matter was originally scheduled for March 20, 2023.  The Court continued that trial date on January 11, 2023.  Notably, as explained in the parties' motion to continue, the parties' first availability for the rescheduled trial was the week of September 5, 2023—almost eight months later.

[9] The Court recognizes that Plaintiffs also submitted an untimely affidavit from Lusi to support their argument that his testimony should not be excluded.  Because Lusi's new affidavit relies upon depositions that occurred after he authored his expert report and after he was deposed, the Court will not exclude that affidavit.

### b. Exclusion under Daubert

Defendant asserts that Bullen's testimony should be excluded because it is not reliable. A number of factors inform whether an expert's opinion is reliable, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003); see Frazier, 387 F.3d at 1262 ("The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony."). Because each factor may not be relevant in every instance, however, district courts "'have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Frazier, 387 F.3d at 1262 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)); see, e.g., Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" (quoting Kumho Tire, 526 U.S. at 150)). That said, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit

14

opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. 1998)).

Bullen asserts that Strozier's and Douglas's failure to wear fall protection was inconsequential because the amount of deceleration force alone would have caused significant injury or death. Bullen also asserts that Strozier and Douglas would have suffered severe injury even if wearing fall protection because they would have hit the work platform when the lanyard rebounded. Neither of these assertions are supported by "any empirical data, survey, study, or literature." McDowell v. Brown, 392 F.3d 1283, 1300 (11th Cir. 2004). Indeed, when Bullen was asked in his deposition about the articles on which he relied, he responded that he could not recall the names. Additionally, Bullen's conclusions are not supported by any testing. While Bullen may have scientifically calculated the deceleration force that one would experience if ejected from a boom lift, Bullen did not provide any basis to support his opinion that the specific amount of deceleration force would cause severe injury. He also did not provide any basis to support his conclusion that the bodies of Strozier and Douglas would have hit the work platform when the lanyard rebounded. Because Bullen failed to connect

these conclusions with the existing data, the Court finds that Bullen's opinions are not reliable and are subject to exclusion. See id. (recognizing that "an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions").

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude Opinions of Russ Rasnic and Anthony Lusi [Doc. 156] is **GRANTED IN PART AND DENIED IN PART**, and Defendant's Motion to Exclude the Testimony of Rob Bullen [Doc. 157] is **GRANTED**.

**SO ORDERED** this 24th day of August, 2023.

J. P. BOULEE
United States District Judge